UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>BB FRAME L.L.C., and JUAN QUEVEDO,<br><br>*Defendants.* | Civil Action No. 24-00056<br><br>ORDER |

**THIS MATTER** comes before the Court by way of Plaintiff United States of America's ("Plaintiff" or the "United States") Motion for Default Judgment (the "Motion") against Defendants BB Frame L.L.C. ("BB Frame") and Juan Quevedo ("Quevedo, and with BB Frame, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2), ECF No. 10;

and it appearing that this action arises out of Plaintiff's attempted recovery of civil penalties owed by Defendants to the U.S. Department of Labor Occupational Safety and Health Administration ("DOL/OSHA"), see Compl., ECF No. 1;

and it appearing that BB Frame "was a construction contractor engaged mainly in framing small to medium sized residential structures," id. ¶ 8;

and it appearing that BB Frame was a New Jersey limited liability company that maintained offices in Palisades Park, New Jersey, but was voluntarily dissolved on or around November 19, 2020,[1] see id. ¶ 4 & Ex. B ¶ 3 (Occupational Safety and Health Review Commission's ("OSHRC") Decision and Order (the "Decision and Order")); Mot. at 2;

---

[1] According to Plaintiff's Complaint, BB Frame is the successor-in-interest to a New Jersey limited liability company called Frame Q, LLC ("Frame Q"), which Quevedo operated as the sole owner and president. See Compl. ¶¶ 5, 11. Plaintiff's Motion, however, alleges that "Frame Q is the successor in interest to BB Frame." Mot. at 2. The OSHRC's Decision and Order declares that Quevedo "caused Frame Q to be dissolved on April 7, 2019, which was about ten weeks after the last of the described thirteen citations issued to Frame Q became a final order." Decision and Order ¶

and it appearing that Quevedo was the owner/operator and sole officer of BB Frame, and had a last known residence in Leonia, New Jersey, see Compl. ¶ 6;

and it appearing that "Quevedo was the only person authorized to hire, terminate, direct, train or discipline employees of BB Frame," of which he owned approximately 70%, see id. ¶ 9;

and it appearing that BB Frame and Quevedo "were issued 5 citations between December 5, 2019 and March 2, 2020, totaling 33 separate violations of construction industry workplace safety and health standards codified" in 29 C.F.R. § 1926, see id. ¶ 12; Mot. at 3; see also generally Decision and Order;

and it appearing that Defendants initially contested the violations and proposed penalties, see Mot. at 3 (citing Decision and Order ¶ 24), but BB Frame later withdrew its notices of contest as to the violations, see Compl. ¶ 13; Mot. at 3 (citing Decision and Order ¶¶ 26, 32, 38, 45, 52);

and it appearing that, as a result, Quevedo remained as the sole respondent and entered into a formal stipulation whereby he agreed to waive any defenses as to the violations and proposed penalties other than the defense that he should not be held personally liable for the violations and proposed penalties in his individual capacity, see Compl. ¶ 13; Mot. at 3 (citing Decision and Order ¶¶ 28, 33, 39, 46, 53);

and it appearing that the matter was heard by OSHRC while Defendants were represented by counsel, see Decision and Order at 1, and OSHRC determined that Quevedo was personally liable for the violations and assessed penalties, which amounted to approximately $2,004,225.00, plus interest, penalties, and administrative fees, if applicable, see Compl. ¶¶ 14, 36; see also Decision and Order at 2, 69–70;

---

72. The Decision and Order also declares that Quevedo "caused BB Frame to be voluntarily dissolved" on November 19, 2020, which "was twelve weeks after the Secretary [of Labor] had filed separate complaints in each of the above captioned matters seeking to affirm all citation items and proposed penalties against both BB Frame and [Quevedo]." Id. ¶ 89. Therefore, the Court assumes that BB Frame is the successor in interest to Frame Q.

2

and it appearing that on January 4, 2024, Plaintiff filed its Complaint against Defendants, alleging that Defendants owed various sums stemming from Defendants' violations of construction industry workplace safety and health standards under the Occupational Safety and Health Act of 1970 ("OSHA") and its regulations at 29 C.F.R. § 1926, see generally Compl.;

and it appearing that on January 24, 2024, Defendants were served in accordance with Federal Rule of Civil Procedure 4 and New Jersey Court Rule 4:4-4,[2] see ECF Nos. 3, 4;

and it appearing that Plaintiff's properly effectuated service on Defendants established a deadline of February 14, 2024, for Defendants to appear, answer, move, or otherwise respond to Plaintiff's Complaint, see Fed. R. Civ. P. 12(a)(1)(A)(i);

and it appearing that Defendants have not appeared, answered, moved, or otherwise responded to Plaintiff's Complaint, see generally Docket;

---

[2] Federal Rule of Civil Procedure 4(e) provides for certain methods to properly effect service, such as "delivering a copy of the summons and of the complaint to the individual personally," "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), (2)(A)–(B). The New Jersey Court Rules allow for a limited liability company to be served through "an officer or managing agent." N.J. Ct. R. 4:4-4(a)(5). Here, Plaintiff's affidavit of service for Quevedo recounts that Plaintiff, through a process server, served Quevedo on January 24, 2024, by leaving it with "Hector Quevedo," "a person of suitable age and discretion who resides" at Quevedo's individual residence or usual place of abode. See ECF No. 4.

Federal Rule of Civil Procedure 4(h) provides that service upon an unincorporated association within a judicial district of the United States shall be effected in one of two ways. First, it can be effected by "[personally] delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h)(1)(b). In addition to personal service upon an officer or agent, Rule 4(h)(1)(A) allows a party to serve an unincorporated association by effecting service in a manner prescribed by Rule 4(e)(1) for serving an individual. See supra. Here, despite process being served on a purportedly dissolved limited liability company, the Court finds Plaintiff properly effected service upon BB Frame. First, Plaintiff has demonstrated that BB Frame was amenable to suit on the date the present action was instituted. Pursuant to N.J.S.A. 42:2C-49(a), "[a] dissolved limited liability company shall wind up its activities, and the company continues after dissolution only for the purpose of winding up." N.J.S.A. 42:2C-49(a). "Winding up" includes "prosecut[ing] and defend[ing] actions and proceedings, whether civil, criminal, or administrative." N.J.S.A. § 42:2C-49(b)(2)(c). This, Defendants failed to do before receiving the 5 citations at issue. Second, Plaintiff's affidavit of service for BB Frame recounts that Plaintiff, through a process server, served BB Frame on January 24, 2024, by leaving it with "Hector Quevedo," "a person of suitable age and discretion who resides" at Quevedo's individual residence or usual place of abode. See ECF No. 3. Therefore, the Court finds sufficient proof of service as to Defendants.

and it appearing that on June 16, 2024, Plaintiff filed a request with the Clerk of Court for entry of default pursuant to Federal Rule of Civil Procedure 55(a), which was granted the same day, see, e.g., ECF No. 9;

and it appearing that on August 5, 2024, Plaintiff filed the instant Motion pursuant to Federal Rule of Civil Procedure 55(b)(2), see generally Mot.;

and it appearing that Plaintiff's Motion requests $2,313,320.59, inclusive of the principal from the original violations, statutory interest and penalties, and post-judgment interest calculated at the statutory rate, see Mot. at 11;

and it appearing that as Defendants have not responded to the pending Motion, the Court deems Plaintiff's Motion unopposed;

and therefore, "[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages," Doe v. Simone, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013);

and it appearing that the Court may enter default judgment only against properly served defendants, see Fed. R. Civ. P. 55(b); E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the Docket reflects that Defendants were properly served in accordance with Federal Rule of Civil Procedure 4, see ECF Nos. 3, 4; Mot. at 5; see also supra note 2;

and it appearing that before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the parties, see Fed. R. Civ. P. 55(b); Mark IV Transp. & Logistics v. Lightning Logistics, Inc., 705 F. App'x 103, 108 (3d Cir. 2017);

4

and it appearing that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345,[3] see, e.g., Compl. ¶¶ 1, 3;

and it appearing that the Court has personal jurisdiction over BB Frame, a limited liability company that was based in New Jersey, and Quevedo, an individual residing in New Jersey, see Compl. ¶¶ 4–6; ECF Nos. 3–4;

and it appearing that venue is proper in the district of New Jersey pursuant to 28 U.S.C. § 1391;

and it appearing that before entering a default judgment, the Court must also determine whether Plaintiff's Complaint sufficiently pleads a cause of action and whether Plaintiff has proven damages, see Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536–38 (D.N.J. 2008);

and it appearing that Plaintiff's unchallenged allegations in the Complaint, taken as true, sufficiently plead a cause of action for the enforcement of civil penalties assessed against Defendants stemming from OSHA violations which Defendants have failed to pay, see Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n, 430 U.S. 442, 447 (1977) (holding that "[i]f the employer fails to pay" an OSHA penalty, "the Secretary [of Labor] may commence a collection action in a federal district court"); United States v. Structure Builders, LLC, No. 22-00705, 2022 WL 4454364, at *2 (M.D. Pa. Sept. 23, 2022) (granting default judgment where Plaintiff's "unchallenged allegations in the complaint, taken as true" stated a cause of action for collection of civil penalties);

---

[3] 28 U.S.C. § 1345 provides in relevant part that "district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." Here, this action was commenced by the United States.

and it appearing that, as to proving damages, Plaintiff filed with its Complaint a Certificate of Indebtedness (the "Certificate") attesting to the amounts owed by Defendants as of September 26, 2022, see Compl., Ex C;

and it appearing that the Certificate is certified under the penalty of perjury by a Financial Program Specialist with the U.S. Department of the Treasury, see id.;

and it appearing that, as to the first citation, the assessed penalties total $601,189.52,[4] which is inclusive of $520,860.00 in principal, $2,186.90 in interest calculated at 1.00% annually as of September 26, 2022, $9,660.79 in interest calculated at 1.00% annually since September 26, 2022, $10,517.09 in penalties calculated at 6.00% annually as of September 26, 2022, and $57,964.74 in penalties calculated at 6.00% annually since September 26, 2022, see Mot. at 4; Cert. at 2;

and it appearing that, as to the second citation, the assessed penalties total $499,949.00, which is inclusive of $433,146.00 in principal, $1,818.62 in interest calculated at 1.00% annually as of September 26, 2022, $8,035.99 in interest calculated at 1.00% annually since September 26, 2022, $8,745.99 in penalties calculated at 6.00% annually as of September 26, 2022, and $48,202.40 in penalties calculated at 6.00% annually since September 26, 2022, see Mot. at 4; Cert. at 2;

and it appearing that, as to the third citation, the assessed penalties total $468,137.51, which is inclusive of $405,588.00 in principal, $1,702.91 in interest calculated at 1.00% annually as of September 26, 2022, $7,521.47 in interest calculated at 1.00% annually since September 26, 2022, $8,189.54 in penalties calculated at 6.00% annually as of September 26, 2022, and $45,135.59 in penalties calculated at 6.00% annually since September 26, 2022, see Mot. at 4; Cert. at 3;

---

[4] Plaintiff concedes that the Certification includes administrative fees, which Plaintiff is not pursuing in this action. Accordingly, "[t]hose amounts have been subtracted from the totals cited in" Plaintiff's Motion. See Mot. at 3 n.2. This is true for all amounts owed under all five citations received.

and it appearing that, as to the fourth citation, the assessed penalties total $426,763.16, which is inclusive of $369,739.00 in principal, $1,552.40 in interest calculated at 1.00% annually as of September 26, 2022, $6,858.01 in interest calculated at 1.00% annually since September 26, 2022, $7,465.69 in penalties calculated at 6.00% annually as of September 26, 2022, and $41,148.06 in penalties calculated at 6.00% annually since September 26, 2022, see Mot. at 4; Cert. at 3;

and it appearing that, as to the fifth citation, the assessed penalties total $317,281.40, which is inclusive of $274,892.00 in principal, $1,154.17 in interest calculated at 1.00% annually as of September 26, 2022, $5,097.81 in interest calculated at 1.00% annually since September 26, 2022, $5,550.56 in penalties calculated at 6.00% annually as of September 26, 2022, and $30,586.86 in penalties calculated at 6.00% annually since September 26, 2022, see Mot. at 4; Cert. at 4;

and it appearing that Plaintiff's evidence, including the Certificate, OSHRC's Decision and Order, and Plaintiff's Motion, which collectively set forth the rates for each assessment, the underlying calculations, and the authority for each of the above amounts, is sufficient to prove damages;

and it appearing that Plaintiff also seeks post-judgment interest "at the statutory rate accruing from the date of entry of the default judgment" pursuant to 28 U.S.C. § 1961(a),[5] see Mot. at 11;

and it appearing that Plaintiff is entitled to post-judgment interest as requested, since it is mandatory if requested, see 28 U.S.C. § 1961(a); Structure Builders, 2022 WL 4454364, at *4;

---

[5] 28 U.S.C. § 1961(a) provides in relevant part that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

and it appearing that the Court must also consider: (1) whether the party subject to default has a litigable defense; (2) the prejudice suffered by the party seeking default if default is denied; and (3) whether defendant's delay is due to culpable conduct, Allaham v. Naddaf, 635 F. App'x 32, 36 (3d Cir. 2015);

and it appearing that as to a litigable defense, the Court finds that Defendants cannot claim a litigable defense, as this matter was previously litigated with Defendants' then-counsel before the OSHRC, see Decision and Order, during which BB Frame waived any defenses and withdrew its contest to the allegations, see Decision and Order ¶¶ 26, 32, 38, 45, 52, and Quevedo waived all defenses except that he should not be held personally liable for the violations, see Decision and Order ¶¶ 28, 33, 39, 46, 53;

and it appearing that Plaintiff has been prejudiced by Defendants' failure to defend this lawsuit because Plaintiff has "pursued and litigated this matter against the Defendants for nearly five years" and has "provided Defendants with all due process," Mot. at 8, but is "unable to proceed with the action due to Defendant[s'] failure to respond" and "has no other means of recovering against Defendant[s]," id. (quoting Structure Builders, LLC, 2022 WL 4454364, at *3);

and it appearing that as to culpability, the Court finds that Defendants' failure to answer evinces culpability and that "[t]here is nothing before the Court to show that the [Defendants'] failure to file an answer was not willfully negligent," Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc., No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011);[6]

**IT IS** on this 24th day of March, 2025;

---

[6] Moreover, Plaintiff recounts that "[o]n or about February 21, 2024, [Plaintiff] was contacted by attorney Richard P. Galler, Esq., purporting to represent the Defendants. There was a brief discussion of possibly settling the litigation and [Plaintiff] forwarded a financial disclosure form to provide a basis for reviewing an ability-to-pay argument by the Defendants." ECF No. 9.1 ¶ 5. However, "[t]here have been no further communications between Mr. Galler and [Plaintiff] in regard to the Defendants." Id. ¶ 6.

**ORDERED** that Plaintiff's Motion for Default Judgment, ECF No. 10, is **GRANTED**; and it is further

**ORDERED** that judgment is hereby entered against Defendants BB Frame and Quevedo in the amount of $2,313,320.59 for principal, interest, and penalties; and it is further

**ORDERED** that the default judgment shall be subject to post-judgment interest "at the statutory rate accruing from the date of entry of the default judgment" in accordance with 28 U.S.C. § 1961(a).

s/ *Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**
